Brent R. Pohlman
**MANDELBAUM BARRETT, P.C.**
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
Phone: (973) 736-4600
Fax: (973) 325-7467
*bpohlman@mblawfirm.com*
**Attorney for Plaintiff**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES R. BAUCUM, D.O., | § § | Case No. _____ |
| Plaintiff, | § § § | |
| v. | § § | |
| RUTGERS UNIVERSITY, THE STATE UNIVERSITY OF NEW JERSEY; RWJ BARNABAS HEALTH, INC.; and JERSEY CITY MEDICAL CENTER, INC., | § § § § § § | **VERIFIED COMPLAINT** *Trial By Jury Demanded* |
| Defendants. | § § | |

Plaintiff James R. Baucum, D.O. ("Baucum" or "Plaintiff"), who resides at 175 Berry Street, Graham, Texas 76450, by way of a Verified Complaint against Defendants Rutgers University, The State University of New Jersey ("Rutgers"), with an address at 57 US Highway 1, New Brunswick, New Jersey 08901; RWJ Barnabas Health, Inc. ("RWJ Barnabas"), with an address at 95 Old Short Hills Rd West Orange, New Jersey 07052; and Jersey City Medical Center, Inc. ("JCMC"), with an address at 355 Grand Street Jersey City, NJ 07302 (collectively, the "Defendants"), states as follows:

1

## SUMMARY OF ACTION

1. Baucum came to Rutgers to pursue his dream of becoming a physician by completing his residency. Doing so required that he perform academically and satisfy certain core competencies. Baucum wholly understood what he needed to do and, from when he arrived at Rutgers in 2021 until his improper and unlawful termination from the residency program in 2023, he did so.

2. Indeed, Baucum completed his academic requirements to qualify him for academic credit for third and fourth year at the Rutgers residency program. Likewise, he completed his clinical requirements. And he completely satisfied the requisite core competencies. And, as of June 7, 2023, Baucum was due to graduate from the Rutgers residency program, sit for his board-certification examination, and pursue his medical license in a state of his choosing.

3. But all of that changed on June 8, 2023. That morning Baucum was supposed to have his final evaluation for his final year in the residency program—a mere administrative hurdle—during which he expected to be told that he was on pace for graduation from the program on June 15, 2023. Of course, Baucum had never received anything less than passing and satisfactory academic and clinical reviews. He was even named the Administrative Chief Resident during his final year in the residency program.

4. However, his final evaluation was suddenly and unexpectedly delayed and, when Baucum showed up to the meeting, he was ambushed with an interrogation by Defendants' representatives. Defendants' representatives hurled various unsubstantiated accusations against Baucum during this meeting but refused to provide him with any specifics that might allow him to effectively respond.

5. And, when Baucum finally did respond and deny the unsubstantiated accusations made by unnamed individuals, he was told that the alleged conduct "did happen" and he was being immediately suspended from the residency program and his employment at the hospital.

6. Baucum was never given an opportunity to respond or even give his account in opposition to the allegations he faced. Instead, days later and without ever being provided information about any "investigation" or "findings," Defendants notified Baucum that he was being terminated from the residency program and his employment and, importantly, that he would not receive academic credit for his fourth and final year in the program notwithstanding his successful completion of the academic requirements.

7. Baucum's termination from the program was classified by Defendants as being for disciplinary reasons which makes it even more suspicious why he would not have received academic credit for his fourth year.

8. By refusing to provide Baucum academic credit, Defendants also destroyed his ability to graduate from the residency program and eliminated any chance of him receiving a certification stating the same. As a result, Baucum cannot sit for his board-certification examination which is required for him to pursue his medical license.

9. In essence, Defendants' rush to judgment has destroyed Baucum's ability to continue his career and ruined his dream of becoming a physician.

10. This, of course, cannot stand. Baucum was entitled to due process—substantive and procedural—before Defendants took these unreasonable, arbitrary and capricious, and egregious actions. The Court now needs to step in to protect and guarantee Baucum's rights and restore his interests (and his life) before it is further—and permanently—damaged.

**PARTIES**

11.	Plaintiff James Baucum, D.O., is an individual and resident of the State of Texas. Baucum was enrolled as a member of the Obstetrics and Gynecology Residency Program at Rutgers Robert Woods Johnson Barnabas Health – Jersey City Medical Center (the "Rutgers Residency Program") from July 2021 until late-June 2023.

12.	Defendant Rutgers University, The State University of New Jersey, is a corporation of the State of New Jersey and is an instrumentality of the State of New Jersey which is primarily funded and controlled by the State of New Jersey.

13.	Defendant RWJ Barnabas Health, Inc., is a New Jersey corporation that operates one of the largest healthcare systems in the State of New Jersey with its headquarters and principal place of business in West Orange, New Jersey. It operates facilities throughout the State of New Jersey, including but not limited to Jersey City Medical Center located in Jersey City, New Jersey.

14.	Defendant Jersey City Medical Center, Inc., is a New Jersey corporation with its headquarters and principal place of business in Jersey City, New Jersey.

**JURISDICTION AND VENUE**

15.	The Court has subject-matter jurisdiction over this action under 28 U.S.C. §1331 as the claims stated herein arise under 42 U.S.C. §1983.

16.	Venue in this Court is proper under 28 U.S.C. §1391(b)(1) because Defendants each reside in the District of New Jersey, and under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the District of New Jersey.

**FACTUAL ALLEGATIONS**

**I.    Baucum's Pursuit Of His Dream Of Becoming A Physician And Successful Completion Of The Academic Requirements For The Residency Program.**

17.     Upon graduating from West Texas A&M University with a Bachelor of Science in 2014, Baucum pursued his lifelong goal of becoming a physician.

18.     In July 2014, Baucum enrolled in the Texas College of Osteopathic Medicine at the University of North Texas Health Science Center.

19.     In May 2018, Baucum graduated from the University of North Texas as a Doctor of Osteopathic Medicine.

20.     In July 2018, following Baucum's graduation from medical school, Baucum was accepted into the Obstetrics and Gynecology ("OBGYN") Residency Program at Baylor Scott and White Medical Center in Temple, Texas.

21.     In July 2021, Baucum transferred to the OBGYN Residency Program at Rutgers RWJ Barnabas – JCMC in Jersey City, New Jersey (the "Rutgers Residency Program").

22.     Baucum entered the Rutgers Residency Program as a third year ("PGY3") resident.

23.     Baucum was issued an initial employment contract for the period of July 1, 2021, through June 30, 2022.

24.     The renewal of Baucum's initial contract and acceptance into the fourth year ("PGY4") of the Rutgers Residency Program was contingent upon his completion of the Accreditation Agencies Core Competencies.

25.     Baucum's academic performance—including his ability to earn academic credit for PGY4—was evaluated based on his proficiency in the following areas: patient care, medical knowledge, clinical competency, practice based learning and improvement, interpersonal and

communication skills, professionalism, systems-based practice evaluations, and/or any other factors deemed necessary by the Program Director to advance to the next level in training.

26. During PGY3, Baucum received two written evaluations from Dr. Lance Bruck.

27. Both of Baucum's PGY3 evaluations indicated that he met expectations and satisfied the core competencies.

28. Based on successfully completing the academic requirements of PGY3, Baucum was promoted into the PGY4 academic program and awarded an employment contract for the 2022-23 year.

29. Based on representations made by Defendants and the Rutgers Residency Program, Baucum understood that his performance and competency in the PGY4 program would be evaluated based on the Accreditation Council for Graduate Medical Education ("ACGME") OBGYN milestones.

30. During Baucum's PGY4, he served as the Administrative Chief of the Rutgers Residency Program from June 2022 through December 2022. This, among other things, was indicative of Baucum's continued success at meeting academic expectations and ongoing satisfaction of the core competencies. Indeed, the Administrative Chief Resident is a position of distinction, professionalism, and leadership which serves as an example for others.

31. As in PGY3, Baucum was supposed to receive two evaluations from Dr. Bruck during PGY4.

32. At Baucum's first evaluation with Dr. Bruck, he was informed that he was meeting all expectations and satisfying the core competencies. Indeed, Baucum was informed that he was on pace to successfully complete the academic program.

33. Baucum's second, and final, PGY4 evaluation with Dr. Bruck was scheduled for June 8, 2023.

34. Graduation from the Rutgers Residency Program was scheduled for June 15, 2023.

35. The last day Baucum was scheduled to perform clinical work was on June 23, 2023.

36. Baucum's employment contract with JCMC was set to expire on June 30, 2023. Of course, there was no intent or expectation of this contract being extended further because, by the time the contract expired, Baucum would have graduated the Rutgers Residency Program.

37. At no point prior to Baucum's final evaluation or his graduation from the Rutgers Residency Program was he ever advised—verbally or in writing—that he was deficient in his academic performance or failing to satisfy the core competencies on which his successful completion of PGY4 was based.

38. On June 7, 2023, graduating students in the Rutgers Residency Program attended an informal graduation party at a restaurant in Jersey City, New Jersey.

39. Following dinner, several of the graduating students went to another bar. The graduates who attended were friends.

## II.    **Defendants' Ambush Interrogation Of Baucum.**

40. On the morning of June 8, 2023, Baucum received an e-mail advising that the evaluation with Dr. Bruck—Baucum's final administrative hurdle to graduation from the Rutgers Residency Program—needed to be rescheduled for later that day. Baucum was not provided any explanation for this rescheduling and had no reason to believe that it was anything negative.

41. Baucum arrived at JCMC before the 3:00 pm meeting and was told to wait for the meeting to begin. At that time, he still had not been advised that he would not be meeting with Dr. Bruck for his final evaluation.

42. Then a representative from Defendants' Human Resources Department ("HR") told Baucum that he no longer would be meeting Dr. Bruck, that he would be meeting with Dr. Emily Slutsky instead, and that he had the right to have a union representative present. Still, however, Baucum was not advised of what was going on, why his evaluation with Dr. Bruck was not occurring, or what any of this related to.

43. When the meeting began, without being advised of why the meeting was even happening, Baucum was ambushed with accusations and interrogated by Defendants' HR representative. The accusations and interrogation occurred in rapid succession such that Baucum hardly had any ability to thoughtfully consider his need for representation or his responses. For instance, the HR representative bombarded him with sequences of questions like:

- "What do you think constitutes flirting?";
- "Do you think it is appropriate if your hand lingers close to someone's waistline after taking a picture?"; and
- "What do you think is inappropriate to do with colleagues in a social setting?"

44. Still, Baucum had no understanding of what this interrogation related to or why he was being asked these accusatory questions. Obviously, however, Defendants were only interested in trying to force Baucum into making some sort of self-incriminating statement in response to this barrage of questions.

45. After this abrupt and unprovoked interrogation, Baucum was informed that an unidentified hospital staff member had made an accusation about Baucum allegedly touching her buttocks at an undisclosed time and undisclosed location during the June 7, 2023 gathering.

46. The HR representative then stated that, in less than 24 hours, JCMC had allegedly interviewed other individuals who were purportedly present at the June 7, 2023 gathering. According to the HR representative, these individuals allegedly provided some degree of corroboration to the unidentified accuser's story. Of course, this all occurred without Baucum's knowledge. Baucum was also informed that there were other unidentified individuals who made unsubstantiated allegations about potentially inappropriate conduct by Baucum at undisclosed locations, times, and dates.

47. The HR representative went on to state that had only a single person made such an allegation against Baucum, it would not be serious, but, because several other unidentified individuals had made unsubstantiated allegations against him, Defendants "had to take it seriously."

48. Baucum responded that he had no recollection of touching anyone in an inappropriate manner, including touching anyone on the buttocks.

49. The HR representative responded that, "Well, it did happen." To be clear, Baucum was told this despite denying the allegations, never being formally interviewed, never receiving any information about the allegations (*i.e.*, when or where during the evening the alleged conduct occurred), never having the chance to review or challenge the allegations, and never even being provided the name(s) of the alleged accuser(s).

50. At no time, however, did Defendants ever identify Baucum's accuser, identify the approximate time of the alleged conduct or identify the location of the alleged conduct.

51. At the conclusion of the meeting, Baucum was informed that he was suspended, effective immediately, and that an "investigation" would be undertaken and completed by June 12, 2023.

52. At no time during the meeting was Baucum ever asked about anything relating to his academic performance or his ability to satisfy the core competencies required to complete the PGY4 program.

53. At no time during the meeting was Baucum ever asked about anything that directly related to Baucum's participation in the Rutgers Residency Program, the PGY4 program, or his employment with Defendants.

54. Baucum was never spoken to or interviewed about the alleged incident again.

55. Baucum was never informed of the identity of his alleged accuser from the June 2, 2023 gathering, nor was Baucum ever informed of the identities of the other individuals that made unsubstantiated allegations against him.

56. Baucum was never informed of the details or specifics about any of the allegations made against him, including, but not limited to, where or when any of them occurred.

57. Baucum never received any report regarding Defendants' purported investigation related to the alleged incident. Nor was Baucum informed of the result of this investigation.

### III. Defendants' Improper And Unlawful Denial Of Academic Credit.

58. On June 22, 2023, seven days after graduation and eight days before Baucum's employment contract expired, he was informed that he was being terminated from the Rutgers Residency Program and his employment.

59. Baucum's termination precluded him from completing his second PGY4 evaluation for the 2022-23 academic year.

60. Baucum's second PGY4 evaluation had been scheduled for June 8, 2023, and was expected to mirror the first evaluation of Baucum's PGY4 program—namely, informing Baucum that he had successfully fulfilled all academic requirements and core competencies. There were no indications whatsoever to the contrary until the meeting was replaced by Defendants' ambush

10

interrogation. The evaluation was an administrative function and had no bearing on Baucum's academic program or his satisfaction of the core competencies. Indeed, by June 8, 2023, Baucum had completed the academic program for PGY4 and had established a right and interest in graduating from the Rutgers Residency Program.

61.  Defendants informed Baucum that he would not receive academic credit for PGY4 because of the allegations made against him from the June 7, 2023 gathering. At no time, however, was Baucum ever informed that he was not fulfilling his academic requirements or satisfying his core competencies. Further, none of the four ACGME OBGYN milestones relating to "professionalism" relate to or encompass the conduct alleged to have occurred at the June 7, 2023 gathering.

62.  Defendants have never articulated any non-disciplinary and/or academic reason for not awarding Baucum academic credit for PGY4.

63.  Defendants' refusal to grant Baucum academic credit for PGY4 was entirely unreasonable, arbitrary and capricious, without any rational basis, and egregious.

64.  Moreover, Defendants' refusal to allow Baucum a reasonable opportunity to respond to the allegations and challenge the result of Defendants' "investigation" was similarly unreasonable, arbitrary and capricious, without any rational basis, and egregious. Indeed, Defendants' actions entirely deprived him of procedural and substantive due process.

65.  Since Baucum did not receive academic credit for PGY4, Baucum was not eligible to graduate from the Rutgers Residency Program even though Baucum met and passed all the program's academic and clinical requirements.

66.  Since Baucum did not receive academic credit for PGY4, Baucum is not eligible to take the examination that would enable him to become a board-certified OBGYN.

67. Since Baucum cannot sit for the board-certification examination, Baucum cannot obtain his medical license or practice medicine as an OBGYN.

## CAUSES OF ACTION

### COUNT I
### Violation of Due Process Under 42 U.S.C. §1983

68. All preceding and foregoing paragraphs are incorporated herein by reference as if fully set forth below.

69. Baucum's right to substantive and procedural due process is protected by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, which governs the actions of a public university and its employees and is enforceable by Baucum as a private individual pursuant to 42 U.S.C. §1983.

70. Defendants violated Baucum's due process rights by depriving him of protected property interests in academic credit for PGY4, graduation from the Rutgers Residency Program, certification of completion of the Rutgers Residency Program, medical licensure, and prospective employment without meaningful notice or an effective opportunity to be heard and respond.

71. Defendant Rutgers engaged in the foregoing conduct as a State actor in that Rutgers is an arm of the State of New Jersey.

72. Defendant RWJ Barnabas engaged in the foregoing conduct as a State actor in that it is inextricably aligned with Rutgers which is arm of the State of New Jersey, and it did so under color of State law.

73. Defendant JCMC engaged in the foregoing conduct as a State actor in that it is inextricably aligned with Rutgers which is arm of the State of New Jersey, and it did so under color of State law.

74. The foregoing conduct violated clearly established statutory and/or constitutional rights of which a reasonable person would have known.

75. Baucum incurred, and continues to incur, injury as a result of Defendants' violations of his right to substantive and procedural due process in that he has been denied academic credit, the ability to graduate from the Rutgers Residency Program, and receive a certification of completion of the Rutgers Residency Program which, in turn, has permanently damaged his ability to become a medical doctor, his employment prospects, and his reputation. Therefore, Baucum has incurred, and will continue to incur, significant lost income, emotional distress, and reputational damage.

76. Defendants are jointly and severally liable to Baucum for compensatory damages in an amount to be determined at trial.

77. Defendants are liable to Baucum for immediate injunctive relief, including, but not limited to, an order requiring Defendants to:

    i. Award Baucum academic credit for PGY4;

    ii. Allow Baucum to graduate from the Rutgers Residency Program;

    iii. Complete and award to Baucum the necessary certification of completion of the Rutgers Residency Program;

    iv. Purge from Baucum's academic record any records related to the unsubstantiated allegations made against him and the purported "investigation"; and

    v. Otherwise affirmatively act to remedy the harm and injury inflicted on Baucum.

## COUNT II
## Violation Of Equal Protection Under 42 U.S.C. §1983

78. All preceding and foregoing paragraphs are incorporated herein by reference as if fully set forth below.

*79.* Defendants' denial of academic credit for PGY4, graduation from the Rutgers Residency Program, and certification of completion of the Rutgers Residency Program to Baucum was entirely unreasonable, arbitrary and capricious, without any rational basis, and egregious. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cnty.*, 488 U.S. 336 (1989); *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 44 (1923).

80. Baucum incurred, and continues to incur, injury as a result of Defendants' violations of his equal protection of law in that he has been denied academic credit, the ability to graduate from the Rutgers Residency Program, and receive a certification of completion of the Rutgers Residency Program which, in turn, has permanently damaged his ability to become a medical doctor, his employment prospects, and his reputation. Therefore, Baucum has incurred, and will continue to incur, significant lost income, emotional distress, and reputational damage.

81. Defendants are jointly and severally liable to Baucum for compensatory damages in an amount to be determined at trial.

82. Defendants are liable to Baucum for immediate injunctive relief, including, but not limited to, an order requiring Defendants to:

    i. Award Baucum academic credit for PGY4;

    ii. Allow Baucum to graduate from the Rutgers Residency Program;

    iii. Complete and award to Baucum the necessary certification of completion of the Rutgers Residency Program;

      iv.    Purge from Baucum's academic record any records related to the unsubstantiated allegations made against him and the purported "investigation"; and

      v.    Otherwise affirmatively act to remedy the harm and injury inflicted on Baucum.

## COUNT III
### Violation Of Due Process Under New Jersey Civil Rights Act, N.J.S.A. §10:6-2(c)

83. All preceding and foregoing paragraphs are incorporated herein by reference as if fully set forth below.

84. Baucum's right to substantive due process is protected by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, the New Jersey State Constitution, and the laws of the State of New Jersey.

85. Defendants violated Baucum's due process rights by depriving him of protected property interests in academic credit for PGY4, graduation from the Rutgers Residency Program, certification of completion of the Rutgers Residency Program, medical licensure, and prospective employment without meaningful notice or effective opportunity to be heard.

86. The foregoing conduct violated clearly established statutory and/or constitutional rights of which a reasonable person would have known.

87. Baucum incurred, and continues to incur, injury as a result of Defendants' violations of his right to substantive and procedural due process in that he has been denied academic credit, the ability to graduate from the Rutgers Residency Program, and receive a certification of completion of the Rutgers Residency Program which, in turn, has permanently damaged his ability to become a medical doctor, his employment prospects, and his reputations. Therefore, Baucum has incurred, and will continue to incur, significant lost income, emotional distress, and reputational damage.

88. Defendants are jointly and severally liable to Baucum for compensatory damages in an amount to be determined at trial.

89. Defendants are liable to Baucum for immediate injunctive relief, including, but not limited to, an order requiring Defendants to:

    i. Award Baucum academic credit for PGY4;

    ii. Allow Baucum to graduate from the Rutgers Residency Program;

    iii. Complete and award to Baucum the necessary certification of completion of the Rutgers Residency Program;

    iv. Purge from Baucum's academic record any records related to the unsubstantiated allegations made against him and the purported "investigation"; and

    v. Otherwise affirmatively act to remedy the harm and injury inflicted on Baucum.

## COUNT IV
### Violation Of Equal Protection Under New Jersey Civil Rights Act, N.J.S.A. §10:6-2(c)

90. All preceding and foregoing paragraphs are incorporated herein by reference as if fully set forth below.

*91.* Defendants' denial of academic credit for PGY4, graduation from the Rutgers Residency Program, and certification of completion of the Rutgers Residency Program to Baucum was entirely unreasonable, arbitrary and capricious, without any rational basis, and egregious.

92. Baucum incurred, and continues to incur, injury as a result of Defendants' violations of his equal protection of law in that he has been denied academic credit, the ability to graduate from the Rutgers Residency Program, and receive a certification of completion of the Rutgers Residency Program which, in turn, has permanently damaged his ability to become a medical

doctor, his employment prospects, and his reputations. Therefore, Baucum has incurred, and will continue to incur, significant lost income, emotional distress, and reputational damage.

93. Defendants are jointly and severally liable to Baucum for compensatory damages in an amount to be determined at trial.

94. Defendants are liable to Baucum for immediate injunctive relief, including, but not limited to, an order requiring Defendants to:

    i. Award Baucum academic credit for PGY4;

    ii. Allow Baucum to graduate from the Rutgers Residency Program;

    iii. Complete and award to Baucum the necessary certification of completion of the Rutgers Residency Program;

    iv. Purge from Baucum's academic record any records related to the unsubstantiated allegations made against him and the purported "investigation"; and

    v. Otherwise affirmatively act to remedy the harm and injury inflicted on Baucum.

## PRAYER FOR RELIEF

95. WHEREFORE, Plaintiff James Baucum, D.O., respectfully requests this Honorable Court enter judgment in his favor against Defendants for the following relief:

    i. Injunctive relief in the form of an order requiring Defendants to:

        a. Award Baucum academic credit for PGY4;

        b. Allow Baucum to graduate from the Rutgers Residency Program;

        c. Complete and award to Baucum the necessary certification of completion of the Rutgers Residency Program;

        d. Purge from Baucum's academic record any records related to the unsubstantiated allegations made against him and the purported "investigation"; and

        e.      Otherwise affirmatively act to remedy the harm and injury inflicted on Baucum.

    ii.      Nominal damages;

    iii.     Compensatory damages;

    iv.     Punitive damages;

    v.      Attorneys' fees and costs; and

    vi.     Such other and further relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiff James Baucum requests a jury trial on all issues triable by a jury.

Respectfully submitted,

Dated: September 27, 2023  
Roseland, New Jersey

**MANDELBAUM BARRETT, P.C.**

*/s/ Brent R. Pohlman*  
Brent R. Pohlman  
MANDELBAUM BARRETT, P.C.  
3 Becker Farm Road, Suite 105  
Roseland, New Jersey 07068  
Phone: (973) 736-4600  
Fax: (973) 325-7467  
*bpohlman@mblawfirm.com*

***Attorney for Plaintiff***