UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES R. BAUCUM, D.O., | § § | Case No. _____ |
| Plaintiff, | § § | |
| v. | § § | |
| RUTGERS UNIVERSITY, THE STATE UNIVERSITY OF NEW JERSEY; RWJ BARNABAS HEALTH, INC.; and JERSEY CITY MEDICAL CENTER, INC., | § § § § § | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE** |
| Defendants. | § § | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE**

MANDELBAUM BARRETT, P.C.

Brent R. Pohlman
MANDELBAUM BARRETT, P.C.
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
Phone: (973) 736-4600
Fax: (973) 325-7467
*bpohlman@mblawfirm.com*

***Attorney for Plaintiff***

1

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT .................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 2

RELEVANT LAW ......................................................................................................................... 2

      I.      Success On The Merits ....................................................................................... 3

      II.     Irreparable Harm ................................................................................................ 4

      III.    The Remaining Factors ..................................................................................... 5

ARGUMENT .................................................................................................................................. 5

      I.      Baucum Is Likely To Succeed On The Merits On His Civil Rights Claims ........... 5

            A.     Baucum's Substantive Due Process Claim. .............................................. 5

            B.     Baucum's Procedural Due Process Claims. .............................................. 7

            C.     Baucum's Equal Protection Claims. ........................................................ 10

      II.     Defendants' Conduct Has Caused, And Continues To Cause, Irreparable Harm To Baucum. ...................................................................................................................11

      III.    The Remaining Factors Weigh In Favor Of Preliminary Relief. ......................... 14

CONCLUSION ............................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**

*Bd. of Curators of Univ. of Missouri v. Horowitz*,
   435 U.S. 78 (1978) ................................................................................................ 5, 7, 8

*Beattie v. Line Mountain Sch. Dist.*,
   992 F. Supp. 2d 384 (M.D. Pa. 2014) ........................................................................11

*Buck v. Stankovic*,
   485 F. Supp. 2d 576 (M.D. Pa. 2007) ..................................................................11, 15

*Camacho Lopez v. Lowe*,
   452 F. Supp. 3d 150 (M.D. Pa. 2020), *as amended* (Apr. 9, 2020) ........................... 5

*Constantini v. Hess*,
   No. CIV.A.03-5402, 2004 WL 2457736 (E.D. Pa. Nov. 1, 2004) ........................... 7

*Dey v. Nuclear Regul. Comm'n*,
   264 F. App'x 889 (Fed. Cir. 2008) ............................................................................ 9

*Doe v. Middlebury Coll.*,
   No. 1:15-CV-192-JGM, 2015 WL 5488109 (D. Vt. Sept. 16, 2015) ..................... 13

*Doe v. Pennsylvania State Univ.*,
   276 F. Supp. 3d 300 (M.D. Pa. 2017) ..................................................................... 12

*Doe v. Univ. of Cincinnati*,
   872 F.3d 393 (6th Cir. 2017) ..................................................................................... 7

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
   765 F.3d 205 (3d Cir. 2014) ...................................................................................... 3

*G & V Lounge, Inc. v. Michigan Liquor Control Commission*,
   23 F.3d 1071 (6th Cir.1994) .................................................................................... 15

*GOLO, LLC v. Goli Nutrition Inc.*,
   No. CV 20-667-RGA, 2020 WL 5203601 (D. Del. Sept. 1, 2020) .......................... 3

*Goss v. Lopez*,
   419 U.S. 565 (1975) ................................................................................................... 8

*Haney v. W. Chester Univ.*,
   No. 18-02456, 2018 WL 3917975 (E.D. Pa. Aug. 16, 2018) ................................. 12

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
    882 F.2d 797 (3d Cir. 1989) ............................................................................................... 5

*Jones v. Bd. of Governors of Univ. of N. Carolina*,
    557 F. Supp. 263 (W.D.N.C.), *aff'd*, 704 F.2d 713 (4th Cir. 1983) ................................. 12, 13

*King v. DePauw Univ.*,
    No. 2:14-CV-70-WTL-DKL, 2014 WL 4197507 (S.D. Ind. Aug. 22, 2014) ................... 13, 14

*Kos Pharms., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ............................................................................................... 3

*Mares v. Miami Valley Hosp.*,
    No. 3:20-CV-453, 2023 WL 3204678 (S.D. Ohio May 2, 2023)............................................ 7

*Papin v. Univ. of Mississippi Med. Ctr.*,
    347 F. Supp. 3d 274 (S.D. Miss. 2018).............................................................................. 9, 10

*Par Pharm., Inc. v. QuVa Pharma, Inc.*,
    764 F. App'x 273 (3d Cir. 2019) ....................................................................................... 5

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017), *as amended* (June 26, 2017) ............................................... 3, 4, 5

*Roberts v. Mentzer*,
    382 F. App'x 158 (3d Cir. 2010) ....................................................................................... 4

*Sample v. Diecks*,
    885 F.2d 1099 (3d Cir. 1989) ............................................................................................. 3

*SI Handling Sys., Inc. v. Heisley*,
    753 F.2d 1244 (3d Cir. 1985) ............................................................................................. 4

*Smith v. Sch. City of Hobart*,
    811 F. Supp. 391 (N.D. Ind. 1993)...................................................................................... 6

*Stoller v. Coll. of Med.*,
    562 F. Supp. 403 (M.D. Pa. 1983), *aff'd*, 727 F.2d 1101 (3d Cir. 1984)................................ 5

*Unger v. Nat'l Residents Matching Program*,
    928 F.2d 1392 (3d Cir. 1991)............................................................................................. 7

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000).......................................................................................................... 10

*Williams v. Cnty. of Burlington Cnty.*,
 No. A-3241-18T1, 2020 WL 969775 (N.J. Super. Ct. App. Div. Feb. 28, 2020) ...................... 4

*Young v. New Sewickley Twp.*,
 160 F. App'x 263 (3d Cir. 2005) ............................................................................................ 4

**Statutes**

42 U.S.C. §1983 ................................................................................................................. 3, 4, 7, 10

N.J.S.A. §10:6-2(c) ................................................................................................................. 3, 10

COMES NOW Plaintiff James R. Baucum, D.O. ("Baucum" or "Plaintiff"), and respectfully requests this Honorable Court enter an Order to Show Cause as to why Defendants Rutgers University, The State University of New Jersey ("Rutgers"); RWJ Barnabas Health, Inc. ("RWJ"); and Jersey City Medical Center ("JCMC") (collectively, the "Defendants") should not be ordered to: (i) award Plaintiff academic credit for PGY4; (ii) allow Plaintiff to graduate from the Obstetrics and Gynecology Residency Program at Rutgers Robert Woods Johnson Barnabas Health – Jersey City Medical Center (the "Rutgers Residency Program"); (iii) complete and award to Plaintiff the necessary certificate of completion from the Rutgers Residency Program; and (iv) purge from Plaintiff's academic record any records related to the allegations made against him.

## PRELIMINARY STATEMENT

By rushing to judgment based on unsubstantiated allegations and refusing to allow Baucum any modicum of notice or an opportunity to respond, Defendants have derailed and, unless this Court issues the requested relief, destroyed Baucum's dream of becoming a physician and, even more fundamentally, Baucum's ability to earn a livelihood in his chosen profession.

As Baucum details in the Verified Complaint and his Certification, he successfully completed the academic program for his fourth year ("PGY4") of the Rutgers Residency Program. His academic performance was never lacking. Baucum's performance of the program's core competencies was likewise satisfactory. Indeed, the only outstanding requirement Baucum needed to accomplish before he received credit for PGY4 and was allowed to graduate was an administrative milestone: an in-person meeting (evaluation) with his advisor. This was scheduled for June 8, 2023—the same day that Defendants decided to ambush Baucum with an impromptu interrogation based on unsubstantiated allegations of inappropriate conduct.

Notwithstanding Baucum's entitlement to academic credit and the right to graduate (and receive the attendant certification of completion of the residency program), Defendants have

1

refused to acknowledge and award credit for same. In doing so, Defendants have effectively destroyed Baucum's ability to become a physician and earn a living. Indeed, without PGY4 credit and his diploma (and certification) from the Rutgers Residency Program, Baucum cannot sit for his board-certification examination. Without being board-certified, Baucum cannot apply for and receive a medical license. Thus, Baucum has found himself in a position where he is completely without recourse except by way of injunctive relief ordering Defendants to award to Baucum what he has rightfully earned: academic credit for his final year in the Rutgers Residency Program.

Baucum is entitled to the requested injunctive relief because the harm that he is currently enduring and will continue to endure is actual and irreversible. By their actions, Defendants have stopped Baucum's career prospects in their tracks and, potentially, have destroyed those prospects forever. Only by ordering Defendants to award Baucum the credit that he earned can this harm be alleviated. Furthermore, Baucum has a likelihood of success on the merits of his federal and state civil rights claims. After completing the requirements for academic credit for his final year in the Rutgers Residency Program, Baucum had a right to the attendant credit and a right to graduate from the program. Baucum has been denied these rights without being afforded meaningful notice and the effective opportunity to respond and be heard. And Defendants' decision to deny him of these rights was unreasonable, without any rational basis, and arbitrary and capricious.

## FACTUAL BACKGROUND

For the factual background, the Court is respectfully referred to the Certification of James R. Baucum, D.O., and the Verified Complaint.

## RELEVANT LAW

"The test for preliminary relief is a familiar one. A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the

nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The first two factors are considered the most critical. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). In considering whether to grant such injunctive relief, courts "must exercise their equitable discretion in a case-by-case, fact-specific manner." *GOLO, LLC v. Goli Nutrition Inc.*, No. CV 20-667-RGA, 2020 WL 5203601, at *14 (D. Del. Sept. 1, 2020). This includes "drawing reasonable inferences from facts in the record." *Id*.

As the moving party, Baucum "bears the burden of showing that these four factors weigh in favor of granting the injunction." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014).

I.   **Success On The Merits**

Baucum brings procedural and substantive due process claims under 42 U.S.C. §1983, an equal protection claim under 42 U.S.C. §1983, a substantive due process claim under N.J.S.A. §10:6-2(c), and an equal protection claim under N.J.S.A. §10:6-2(c). These claims each relate to Defendants' denial of academic credit for PGY4, denial of graduation from the Rutgers Residency Program, and denial of issuing a certification of completion for the Rutgers Residency Program.

To succeed on his procedural due process claim under 42 U.S.C. §1983, Baucum must prove: "(1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected [him], or caused [him] to be subjected to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that [he] suffered injury as a result of the deprivation without due process." *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir. 1989).

To succeed on his substantive due process claim under 42 U.S.C. §1983, Baucum must prove: "(i) defendants acted under color of law; (ii) a protected property or liberty interest was at

3

stake; (iii) the defendants had a duty of care toward the plaintiff; and (iv) a deprivation within the meaning of the due process clause occurred." *Roberts v. Mentzer*, 382 F. App'x 158, 166 (3d Cir. 2010).

Regarding his equal protection claim under 42 U.S.C. §1983, Baucum must prove that "he has been treated differently because of his membership in a suspect class or his exercise of a fundamental right, or that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest." *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005).

Baucum's due process and equal protection claims under the New Jersey Civil Rights Act share the same elements as his claims made under 42 U.S.C. §1983, thus the required proof is the same. *See Williams v. Cnty. of Burlington Cnty.*, No. A-3241-18T1, 2020 WL 969775, at *3 (N.J. Super. Ct. App. Div. Feb. 28, 2020) ("[The New Jersey Civil Rights Acts] was modeled after 42 U.S.C. §1983, so we apply the same elements to claims brought under both the federal and state statutes.").

To carry his burden to receive injunctive relief insofar as demonstrating a likelihood of success on the merits of these claims, Baucum needs only to show that he "can win on the merits," which means his likelihood of success is "significantly **better than negligible** but not necessarily more likely than not." *Reilly*, 858 F.3d at 179 (emphasis added).

## II. <u>Irreparable Harm</u>

"The relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985). The danger of such harm must be shown to be more likely than not unless the relief is granted. *Reilly*, 858 F.3d at 179. And a "preliminary injunction must be the only

4

way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

"Irreparable harm is injury of such an irreversible character that prospective judgment would be inadequate to make the movant whole." *Camacho Lopez v. Lowe*, 452 F. Supp. 3d 150, 163 (M.D. Pa. 2020), *as amended* (Apr. 9, 2020). The harm claimed must be "imminent and probable." *Id*. "To be imminent, the injury cannot be remote or speculative; it must be poised to occur before the District Court can hold a trial on the merits." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 279 (3d Cir. 2019).

### III. The Remaining Factors

Should the first two "most critical" factors be met, "a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly*, 858 F.3d at 179.

## ARGUMENT

### I. Baucum Is Likely To Succeed On The Merits On His Civil Rights Claims.

#### A. Baucum's Substantive Due Process Claim

The Third Circuit has recognized that a medical student has a "constitutionally protected interest in continuing with his medical education" such that "substantive due process requires that his medical education not be terminated for 'arbitrary or capricious' reasons." *Stoller v. Coll. of Med.*, 562 F. Supp. 403, 412 (M.D. Pa. 1983), *aff'd*, 727 F.2d 1101 (3d Cir. 1984) (citing *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 92 (1978)). Therefore, it is settled that Baucum had a constitutionally protected interest in completing the Rutgers Residency Program, which only entailed receiving academic credit for PGY4 and being allowed to graduate.

The next determination is whether Defendants' refusal to award Baucum academic credit for his final year of the Rutgers Residency Program and allow him to graduate—wholly ***academic***

5

*measures*—bore any rational relationship to his academic performance. In short, it did not. There was, and is, *no rational basis* for denying Baucum academic credit for the final year of his academic program. The allegations made against Baucum, which served as the basis for his termination from the program and for the denial of his PGY4 credit, were totally unrelated to academics. And the punishment Defendants initiated against Baucum was based on those non-academic allegations and taken for entirely *disciplinary* reasons.

While not from this Circuit, the case of *Smith v. Sch. City of Hobart*, 811 F. Supp. 391 (N.D. Ind. 1993), is informative. There, the court took up the issue of whether a school's reduction in academic grades as a means of discipline violated due process, including substantive due process. The court found, unequivocally, that the grade reductions were "unreasonable and arbitrary on [their] face" because they were imposed "as a disciplinary measure and not imposed due to a lack of effort in academics." *Id*. at 398–99. The court rightly held that, "[t]o warrant an academic sanction, a student's misconduct *must be directly related* to the student's academic performance." *Id*. at 399 (emphasis added).

Here, Defendants' refusal to award Baucum *academic credit* and allow him to graduate from the *academic program* was arbitrary and capricious because there was no rational basis for Defendants' conduct based on Baucum's academic performance. Indeed, the only reason for Baucum's termination from the Rutgers Residency Program and refusal of PGY4 credit—conduct that violated Baucum's procedural due process rights as well—was disciplinary. The alleged conduct bore no relationship whatsoever to Baucum's academic performance. Nor did Defendants ever suggest that Baucum's academic performance was deficient or sub-standard. The alleged conduct also did not implicate any of the core competencies, which had been satisfied and completed by the time of the alleged disciplinary violations. And, further, Baucum never was

6

informed that he had not satisfied any academic standards or that he was at all deficient or in danger of not receiving academic credit (or graduating) until the disciplinary actions were taken against him.

Therefore, Baucum has a significantly more than negligible chance of succeeding on the merits on his substantive due process claim under 42 U.S.C. §1983 because he was denied academic credit and the ability to graduate from his academic program when the alleged conduct at issue for which he was being disciplined bored no relation whatsoever to academics, and rather was related to his employment.

### B. Baucum's Procedural Due Process Claims

As an initial matter, Defendants are undoubtedly State actors as the Rutgers Residency Program is run by and bears the name of The *State* University of New Jersey. Further, the interest at issue—namely, Baucum's interest in continuing and completing his medical residency—is a recognized property interest. *See Horowitz*, 435 U.S. at 84–85 (assuming a medical student had a protected interest in pursuing a medical career and continuing his medical education); *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1397 (3d Cir. 1991) (recognizing the difference between currently attending students who have a property interest to continue their education and prospective students who do not); *Constantini v. Hess*, No. CIV.A.03-5402, 2004 WL 2457736, at *6 (E.D. Pa. Nov. 1, 2004) (holding that the plaintiff had a legally protected property interest in his continued residency); *see also Mares v. Miami Valley Hosp.*, No. 3:20-CV-453, 2023 WL 3204678, at *9 (S.D. Ohio May 2, 2023) (citing *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017)) ("A student's continued enrollment in an academic program, including a residency program, 'clearly implicates' a protected property interest[.]").

The Supreme Court has made it clear that, when it comes to disciplinary actions at a public educational institution, due process *requires* "that the student be given oral or written notice of the

7

charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). Such a "hearing" is required in circumstances involving disciplinary actions because, when taking such action, the school bears "a sufficient resemblance to traditional judicial and administrative factfinding." *Horowitz*, 435 U.S. at 88–89. This, of course, stands in contrast to when a school takes adverse action for academic reasons. *See id*. at 90 ("the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision[-]making.").

Here, there is no dispute that Baucum has been denied academic credit and the ability to graduate from the Rutgers Residency Program for ***disciplinary*** reasons. There is no evidence whatsoever that Baucum was ever academically underperforming. He was appointed the Administrative Chief Resident during the PGY4 program—a position of distinction. He also was provided positive feedback during his first of two administrative evaluations in the PGY4 program. And, leading up to his second evaluation on June 8, 2023, Baucum was never informed that he was performing unsatisfactorily in any manner. Thus, his academic performance was never in question during his time in the PGY4 program, and, in fact, he had completed his academic requirements for the program.

Additionally, when Baucum was ambushed and interrogated about the unsubstantiated allegations, there was no discussion whatsoever about his academic record or his core competencies. The entire interrogation focused on alleged inappropriate conduct with a co-worker that occurred at a non-school related social event. And it was during that same interrogation that Baucum was informed that he was being suspended. Thus, there is no argument to be made that any other aspect of Baucum's performance in the Rutgers Residency Program was considered

8

when Defendants made the adverse determination on his future. It was also at that initial interrogation that Baucum was informed that his academic credit for PGY4 might be in jeopardy.

The mere timing of Defendants' actions makes it readily apparent that all were taken for entirely *disciplinary* reasons. This is coupled with the fact that Defendants never once suggested Baucum was somehow deficient academically during his PGY4, and, in fact, never conducted his second and final academic review for PGY4. That being the case, Baucum was entitled to a degree of due process more similar to the judicial process. This includes, at least, effective and meaningful notice of the allegations against him and the ability to effectively and meaningfully respond. *See Dey v. Nuclear Regul. Comm'n*, 264 F. App'x 889, 891 (Fed. Cir. 2008) (holding that the "requirements of minimum due process" include "notice providing sufficiently specific reasons" for the adverse action to allow an "adequate opportunity to make a meaningful response").

Baucum was provided *neither*. He was ambushed with allegations of inappropriate conduct without any warning. He was told by Defendants' representative that the allegations were already substantiated though he was never made aware of any investigation and never asked for his version of events. Defendants never gave notice of the time, place, or manner of the conduct such that Baucum could make any meaningful response. Nor did Defendants ever disclose the identity of the alleged accuser such that Baucum could respond effectively. Finally, after a purported "further investigation" into the allegations by Defendants—allegations Defendants already told Baucum they believed and credited—Defendants upheld their own snap judgment without even providing Baucum with a report or summary of findings.

Defendants' conduct here is more appalling as Baucum was afforded even less process than in *Papin v. Univ. of Mississippi Med. Ctr.*, 347 F. Supp. 3d 274 (S.D. Miss. 2018), which was an academic dismissal case. In that case, the plaintiff was informed of many performance

9

deficiencies—including academic and disciplinary issues—and even signed a remediation plan. Nonetheless, the plaintiff was suspended and then terminated from the residency program. The plaintiff appealed but was not allowed to question witnesses or present a defense besides his own testimony during the appellate hearing. The court held that this fell below the "clearly established floor of procedural due process, especially in academic dismissal cases." *Id*. at 282.

In the instant case—which is not an academic dismissal case and, thus, demands more process—Baucum was never informed of deficient performance. He was never allowed the chance to present his own testimony let alone that of other witnesses. And he was never allowed to know the identity of his accuser or the time or place of the alleged incident. This was entirely deficient process given the deprivation of Baucum's established property interest.

Thus, Baucum has a significantly more than negligible chance of succeeding on the merits on his procedural due process claims under 42 U.S.C. §1983 and N.J.S.A. §10:6-2(c) because he was dismissed for wholly disciplinary reasons without being provided meaningful and effective notice or a meaningful and effective opportunity to be heard or respond.

   **C.**  **Baucum's Equal Protection Claims**

Similarly, Baucum has a significantly better than negligible chance at success on the merits for his federal and state equal protection claims. This is a "class of one" claim whereby Baucum has been intentionally treated differently from similarly situated others without any rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, as stated above, Baucum was intentionally terminated from the Rutgers Residency Program and denied academic credit and the ability to graduate, which has resulted in his inability to continue his medical education and career. These adverse actions were all academic in nature. However, as discussed above and shown in the attached submissions, Baucum had absolutely no academic shortcomings in the Rutgers Residency Program and was never informed of any

10

deficiency of any kind at any time. The only reason ever provided for Defendants' adverse actions was disciplinary. That discipline, as well as the underlying alleged conduct which it was purported to address, had no rational relationship to Baucum's academic performance or his academic credit for the PGY4 program. Therefore, Defendants' conduct violated Baucum's right for equal protection.

## II.     Defendants' Conduct Has Caused, And Continues To Cause, Irreparable Harm To Baucum.

Defendants' conduct in refusing to award Baucum academic credit for PGY4, refusing to allow him to graduate from the Rutgers Residency Program, and refusing to complete and award a certification of completion has stonewalled Baucum from pursuing his chosen career and stymied his ability to seek employment. Without PGY4 credit and graduation from the Rutgers Residency Program, Baucum cannot apply for or take his board-certification examination. This precludes him from seeking and securing a medical license. Indeed, without credit or graduation, Baucum will be entirely precluded from pursuing a career as a physician and will suffer reputational damage.

As an initial matter, the injury alleged here is constitutional in nature. Baucum has alleged that his substantive and procedural due process rights have been violated by Defendants' conduct. "The violation of a fundamental constitutional right constitutes irreparable injury." *Buck v. Stankovic*, 485 F. Supp. 2d 576, 586 (M.D. Pa. 2007). Indeed, "[d]eprivation of a constitutional right *alone* constitutes irreparable harm *as a matter of law*, and no further showing of irreparable harm is necessary." *Beattie v. Line Mountain Sch. Dist.*, 992 F. Supp. 2d 384, 396 (M.D. Pa. 2014) (emphasis added). Thus, the irreparable harm prong is satisfied given the nature of injury alleged and Baucum's likelihood of success on the merits.

Additionally, courts have commonly held that delaying a plaintiff from the completion of a degree, delaying entrance into one's chosen profession, and the reputational damage

11

accompanying suspension or termination from an educational program are sufficient—independently and when combined—to show irreparable harm. In *Haney v. W. Chester Univ.*, No. 18-02456, 2018 WL 3917975 (E.D. Pa. Aug. 16, 2018), that court held that the plaintiff adequately demonstrated irreparable harm where potential expulsion from college would result in being "denied the benefits of an education at his chosen school and his academic and professional reputation will be damaged" and it "is likely to affect Plaintiff's ability to enroll at other institutions of higher education and to pursue a career." *Id*. at *11.

Similarly, in *Doe v. Pennsylvania State Univ.*, 276 F. Supp. 3d 300 (M.D. Pa. 2017), the court held that a two-year suspension from medical school irreparably harmed the plaintiff. The court found irreparable harm existed for three independent reasons. First, the "gap, or delay, in completion of the program would constitute irreparable harm." *Id*. at 314. Second, the plaintiff would suffer irreparable harm because, if suspended, "Doe would essentially be without means to mitigate this harm by securing acceptance into another medical program, and, if he intends to proceed with his goal of becoming a doctor, would essentially be forced to await his return to full participation in the program." *Id*. Third, the "gap would constitute irreparable harm as he would forever be forced to explain his lengthy tenure within this program and, ultimately, his delayed entry into the professional workforce." *Id*. at 315.

And, while not in this Circuit, in *Jones v. Bd. of Governors of Univ. of N. Carolina*, 557 F. Supp. 263 (W.D.N.C.), *aff'd*, 704 F.2d 713 (4th Cir. 1983), that court held that the plaintiff's termination from a nursing program and preclusion on re-applying in the following semester was sufficient irreparable harm to justify a preliminary injunction. The court reasoned that, regardless of whether the plaintiff prevailed on the merits, she would be delayed in receiving her degree, have to explain the delay for the rest of her professional career, be delayed in earning a living as a nurse,

and would be deprived of completing her degree with her classmates. *Id*. at 266. The court held that, "it is clear that plaintiff could never be adequately compensated for these injuries, whatever their degree. In addition, a quiet exoneration at some point in the future could never fully erase the highly stigmatizing effect that defendants' actions against plaintiff have had and will continue to have, if the plaintiff is right in her claim." *Id*.[1]

Here, Baucum has, and continues to, experience the exact same form of irreparable harm described in the above cases. His medical education and entrance into his chosen profession is being unfairly delayed—if not completely denied—by Defendants' refusal to award him credit and allow him to graduate. Should this Court not issue injunctive relief, Baucum's delay will continue even longer—through 2024, in fact, regardless of the result on the merits—because the deadline for applying to sit for the qualifying examination for his board certification is March 1, 2024.[2] Thus, Baucum will be delayed another full year, at least, even if he succeeds on the merits. Further, if Baucum is forced to continue to endure a lengthy delay in receiving PGY4 credit and being allowed to graduate, like the plaintiffs in the above cases, he will have to explain this delay for the entire duration of his professional career. This, of course, would also require that Baucum expose

---

[1] *See also Doe v. Middlebury Coll.*, No. 1:15-CV-192-JGM, 2015 WL 5488109, at *3 (D. Vt. Sept. 16, 2015) ("money damages cannot compensate for the loss of his senior year in college with his class, the delay in the completion of his degree, or the opportunity to begin his career in July 2016 with this particular employment. Further, Plaintiff would have to explain, for the remainder of his professional life, why his education either ceased prior to completion or contains a gap."); *King v. DePauw Univ.*, No. 2:14-CV-70-WTL-DKL, 2014 WL 4197507, at *13 (S.D. Ind. Aug. 22, 2014) (holding that a college student's gap in education or late-stage transfer would forever require him to explain the circumstances and be subjected to stigma).

[2] *See* https://www.abog.org/docs/default-source/bulletins/2024/2024-subspecialties-bulletin-5.3.2023.pdf?Status=Master&sfvrsn=5c737472_3/2024-Subspecialties-Bulletin-5.3.2023.pdf (American Board of Obstetrics & Gynecology, *2024 Bulletin for Subspecialty Certification*) (informing candidates that the application period for the qualifying examination closes on March 1, 2024).

13

himself to stigma given the explanation for the delay would necessarily include the unsubstantiated allegations against him, which constituted irreparable harm in *King*.

Therefore, as a matter of law, the deprivation of Baucum's due process rights is sufficient to establish irreparable harm. However, Baucum is further justified in seeking the requested relief because, if it is not ordered, he will experience a lengthy delay in completing the final hurdle in his education, experience an even lengthier delay in pursuing his chosen profession, and will be subjected to a lifetime of personal and professional embarrassment for having to explain this delay each time his credentials are reviewed. ***This is an exemplary case for issuing injunctive relief***.

### III.     The Remaining Factors Weigh In Favor Of Preliminary Relief.

Because the Court should find in Baucum's favor on the first two factors, there is no need for the Court to continue with the balancing of equities. However, should the Court do so, they weigh heavily in Baucum's favor. First, there is no harm whatsoever to Defendants were they to be ordered to award Baucum PGY4 credit, allow him to graduate, complete and award him a certification of completion, and purge his record of the accusations. Baucum is not returning to the Rutgers Residency Program—he completed the course and clinical work. Thus, there is no argument that he presents any type of negative impact on the program were the relief to be granted. Nor is Baucum planning to return to New Jersey—he is settled in Texas and wishes to pursue his Texas medical license. And there is no danger that somehow Defendants will incur any negative response from the community. Defendants did not publicize the allegations or "investigation"—not even to Baucum himself. Therefore, there is no argument that Defendants may face backlash from the public, other students, residents, or staff.

And, as to the public interest, where a constitutional right is at issue, the public interest weighs in favor of preserving such rights. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Buck*, 485 F. Supp. 2d at 586–87 (citing *G & V Lounge,*

14

*Inc. v. Michigan Liquor Control Commission*, 23 F.3d 1071, 1079 (6th Cir.1994)). As stated above, because Baucum's due process rights, his equal protection rights, and his property interests are all at issue—all of which are constitutionally protected—the public interest weighs in favor of Baucum and the requested preliminary relief.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for an Order to Show Cause should be granted.

Respectfully submitted,

Dated: September 27, 2023  **MANDELBAUM BARRETT, P.C.**
Roseland, New Jersey

*/s/ Brent R. Pohlman*
Brent R. Pohlman
MANDELBAUM BARRETT, P.C.
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
Phone: (973) 736-4600
Fax: (973) 325-7467
*bpohlman@mblawfirm.com*

*Attorney for Plaintiff*

15