## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES R. BAUCUM, D.O.,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>RUTGERS UNIVERSITY, THE STATE UNIVERSITY OF NEW JERSEY, *et al.*,<br><br>　　　　　　　　Defendants. | Civil Action No. 23-20707 (JXN)(JSA)<br><br><br>**OPINION** |

**NEALS**, District Judge

Before the Court are motions to dismiss filed by Defendants Jersey City Medical Center, Inc. ("JCMC"), RWJBarnabas Health, Inc. ("RWJBH" or "RWJBarnabas") (ECF No. 48), and Rutgers University, The State University of New Jersey ("Rutgers") (ECF No. 49) (collectively, "Defendants") pursuant to Federal Rules of Civil Procedure [1] 12(b)(1), 12(b)(6), and 9(b). Plaintiff James R. Baucum, D.O. ("Plaintiff") opposed the motions (ECF No. 50), and Defendants replied in further support (ECF Nos. 51, 52). Jurisdiction and venue are proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1391, respectively. The Court has carefully reviewed the Amended Complaint and the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motions are **GRANTED in part**.

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## I.    __BACKGROUND__[2]

Plaintiff graduated from the University of North Texas as a Doctor of Osteopathic Medicine in July of 2018. (Amended Complaint ("Am. Compl.") ¶ 19, ECF No. 37.) Following medical school, Plaintiff began an Obstetrics and Gynecology ("OBGYN") residency program at the Baylor Scott and White Medical Center in Temple, Texas. (Am. Compl. ¶ 20.) Plaintiff states that in July 2021, he transferred to Rutgers University's School of Health OBGYN Residency Program at RWJBH-JCMC in Jersey City, New Jersey (" Residency Program"), and remained there until he was terminated on June 22, 2023. (*Id.* ¶¶ 1, 21, 70.) Plaintiff claims that the  Residency Program is a joint venture between Rutgers University and Defendants JCMC and RWJ Barnabas. (*Id.* ¶ 24.) According to Plaintiff, the  Residency Program was physically located at Jersey City Medical Center, and staff members and employees at JCMC were responsible for the on-site administration and operation of the Program. (*Id.* ¶¶ 30, 31.)

Plaintiff entered the Residency Program as a third-year resident ("PGY3"). (*Id.* ¶ 33.) In connection therewith, Plaintiff entered into Resident Agreements with JCMC for PGY3, which ran from July 1, 2021, through June 30, 2022, and the fourth year of the Residency Program ("PGY4"), which ran from July 1, 2022, through June 30, 2023. (*See* Certification of Lance R. Bruck, M.D. ("Bruck Cert."), Exs. F and H, Resident Agreements ("RA"), ECF No. 49-4.[3]) The Resident Agreements provide that JCMC

> may terminate or not renew this Agreement at any time for just cause. Cause shall be defined to include: the Resident's unsatisfactory performance, nonperformance or inability to perform the obligations pursuant to this

---

[2] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Defendants RWJBH and JCMC attached a copy of the Resident Agreements to their motion. A court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).

Agreement or the terms of the [Collective Bargaining Agreement between JCMC and the Committee of Interns and Residents /SEIU ("CIR Agreement")].

(RA ¶ 4.4.) Further, the section of the Resident Agreements entitled "Grievance" provides that "[in] the event of an academic or disciplinary action that could result in suspension, dismissal, non-renewal of the Resident Agreement or non-promotion to the next year of the Residency Program, Resident may utilize the process outlined in the CIR Agreement." (*Id*. ¶ 5.)

Plaintiff claims that renewal of his initial contract and acceptance into PGY4 were contingent upon completing the Accreditation Agencies Core Competencies. (Am. Compl. ¶ 36.) During PGY3, Plaintiff received two written evaluations from JCMC Residency Program Director, Dr. Lance Bruck ("Dr. Bruck"), which indicated Plaintiff met expectations and satisfied the core competencies. (*Id*. ¶¶ 38–39.)

Having completed the PGY3 requirements, Plaintiff was promoted to PGY4 and awarded an employment contract for the 2022-23 year. (*Id*. ¶ 40.) Plaintiff's employment contract with JCMC was set to expire on June 30, 2023. (*Id*. ¶ 48.) Plaintiff claims that based on Defendants' representations and those of the Residency Program, Plaintiff understood that evaluation of his performance and competency in the PGY4 program would be based on the Accreditation Council for Graduate Medical Education ("ACGME") OBGYN milestones. (*Id*. ¶ 41.)

During PGY4, Plaintiff was supposed to receive two evaluations from Dr. Bruck. (*Id*. ¶ 43.) At his first evaluation, Plaintiff was informed that he met all expectations, satisfied the core competencies, and was on pace to complete the academic program. (*Id*. ¶ 44.) Plaintiff states that he advanced to PGY4, served as Administrative Chief Resident, and his academic and clinical evaluations reflected satisfactory progress toward the ACGME's core competencies. (*Id*. ¶¶ 42–49.)

3

On June 7, 2023, the day prior to Dr. Bruck's final evaluation, which was needed for Plaintiff to complete the residency, Plaintiff and other graduating students attended an informal party to celebrate the end of the residency at a restaurant in Jersey City, New Jersey. (*Id.* ¶¶ 45, 50.) Following dinner, several of the residents went to a bar. (*Id.* ¶ 51.) Plaintiff states that the graduates who attended were friends. (*Id.*.)

The following day, June 8, 2023, Plaintiff received notification that his final PGY-4 administrative evaluation with Dr. Bruck was cancelled. (*Id.* ¶¶ 52–53.) Plaintiff was, instead, summoned to a meeting with a JCMC human-resources representative who informed him that a hospital staff member accused him of inappropriately "touching her buttocks" during the gathering the night before. (*Id.* ¶¶ 52–58.) The representative further advised Plaintiff that JCMC had interviewed other attendees who "corroborated" the complainant's account, adding that there were "other... allegations about potentially inappropriate conduct by Plaintiff." (*Id.* ¶¶ 57–58.) Plaintiff was suspended effective immediately and informed that an investigation would follow. (*Id.* ¶ 63.)

JCMC's Chief Human Resources Officer, Mary Cataudella ("Cataudella"), subsequently issued a June 13, 2023 letter on behalf of Dr. Bruck, confirming Plaintiff's suspension without pay based on "allegations of inappropriate conduct;" prohibiting him from attending the graduation ceremony; and instructing Plaintiff that he was "prohibited from having any form of communication with the individuals who made complaints against [him], or were witness to the alleged June 7[ ]events that triggered [the] investigation." (Ex. 4 ("June 13, 2023 Cataudella Letter"), ECF No. 23-2.) Plaintiff asserts that the investigation was vague, that he was denied the identity of any accuser, was given no written report, and received no opportunity for a meaningful hearing prior to termination. (*Id.* ¶¶ 59–66.)

4

On June 22, 2023, Cataudella sent Plaintiff another letter on behalf of Dr. Bruck, notifying him that JCMC had terminated his employment contract and dismissed him from the JCMC Program due to "multiple violations of the terms of the Resident Agreement, Code of Conduct, Rules of Behavior, and Policies of" JCMC and RWJBH. (Ex. 5 ("June 22, 2023 Cataudella Letter"), ECF No. 23-2.) The letter stated that "[s]ince [Baucum had] not satisfied the Criteria for Graduation from the Department of Obstetrics and Gynecology Residency Program, [he] will not graduate and will not receive certification of successful completion of" PGY4. (*Id*.) The letter also indicated that JCMC had notified the CIR, and that the CIR could "advise [Plaintiff] of [his] rights under the collective bargaining agreement and Resident Agreement." (*Id*.) Plaintiff's termination precluded him from completing his second PGY4 evaluation. (Am. Compl. ¶ 71.)

Plaintiff initiated this action by filing a Complaint on September 27, 2023. (*See* ECF No. 1.) Rutgers moved to dismiss on January 26, 2024 (ECF No. 22), and JCMC and RWJBH jointly moved to dismiss as well (ECF No. 23).

On August 6, 2024, the Court heard oral argument on Defendants' motions (*see* ECF No. 35; ECF No. 40), and by Order entered that day dismissed Plaintiff's Complaint without prejudice (ECF No. 36). The Court found Plaintiff failed to sufficiently allege that the private hospital defendants acted under color of state law for purposes of 42 U.S.C. § 1983, and that Plaintiff had not yet adequately pursued the internal grievance procedures available under the governing collective bargaining agreement. (*See* Aug. 6, 2024 Oral Arg. Transcript ("Tr.") at 32:22–35:9, ECF No. 40). As a result, the Court granted Plaintiff leave to amend. (*Id*.; ECF No. 36.)

On September 20, 2024, Plaintiff filed an Amended Complaint asserting claims under 42 U.S.C. § 1983 for alleged violations of procedural due process (Count I); equal protection (Count II); and parallel claims under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2(c), asserting violations of due process (Count III) and equal protection (Count IV). (Am. Compl. ¶¶ 80–106.) Plaintiff seeks injunctive relief, ordering award of academic credit and a certificate of completion, as well as nominal, compensatory, and punitive damages, and attorneys' fees. (*Id*.)

In the Amended Complaint, Plaintiff claims that the questioning by JCMC human resources was rapid and vague, that he was not provided with the identity of any accuser, was not offered specifics about the alleged incidents, and was suspended immediately at the close of the meeting. (*Id.* ¶¶ 52–69.) Plaintiff also alleges he was not otherwise interviewed or given a report of any investigation, and that on June 22, 2023, he was terminated from his residency and notified that he would not receive academic credit for his PGY4 year or be awarded a certificate of completion—consequences that, he alleges, precluded graduation, board eligibility, and ultimately medical licensure. (*Id.* ¶¶ 70–79.)

On May 7, 2025, Rutgers moved to dismiss the Amended Complaint. (Rutgers Mot. to Dismiss, ECF No. 48.) JCMC and RWJBH jointly filed a separate motion that same day. (JCMC Mot. to Dismiss, ECF No. 49.) Plaintiff filed a consolidated opposition to Defendants' motions (Pl. Opp'n, ECF No. 50), and Defendants replied in further support (JCMC Reply, ECF No. 51; Rutgers Reply, ECF No. 52). These motions are now fully briefed and ripe for the Court to decide.

## II.  <u>LEGAL STANDARD</u>

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).  "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Twombly*, 550 U.S. at 570).

To determine whether a complaint is sufficient under Rule 12(b)(6), the Third Circuit applies a three-part inquiry: (1) the Court identifies the elements plaintiff must plead to state a claim; (2) the Court determines which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the Court assumes the well-pleaded factual allegations are true to ascertain "whether they plausibly 'give rise to an entitlement for relief.'" *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

Further, a court must only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Where the complaint relies on incorporated documents, the Court may consider those documents and must credit the document where it conflicts with conclusory allegations. *See id.*; *Lungu v. Antares Pharma Inc.*, No. 21-1624, 2022 WL 212309, at *5 n.14 (3d Cir. Jan. 25, 2022) (non-precedential).

## III.   DISCUSSION

Defendants contend that the Amended Complaint is deficient for multiple, principally related reasons: (1) it relies on impermissible group pleading and fails to identify what actions each Defendant took; (2) it fails to plead that JCMC or RWJBH acted under color of state law such that § 1983 applies; (3) it fails to plead Rutgers' particularized involvement in the decisions to investigate, suspend, terminate, or withhold academic credit (and therefore fails to state municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)); and (4) Plaintiff did not exhaust the contractual grievance procedures available through the Collective Bargaining Agreement between JCMC and the CIR Agreement, which is incorporated into the Resident Agreement,[4] or else fails to plead facts excusing exhaustion. (*See* Rutgers Mot. to Dismiss; JCMC Mot. to Dismiss.) Defendants also raise related questions concerning Rule 8 group pleading and the futility of further amendment.

Rutgers also asserts that, other than being the sponsoring institution through which the JCMC residency program receives its ACGME accreditation, it had no direct involvement in

---

[4] As to Plaintiff's due process claims, Rutgers argues that the Court already dismissed them for failure to exhaust the grievance process under the CIR Agreement, and that the Amended Complaint fails to cure this defect. (*See* ECF No. 48-2; *see also* ECF No. 23-1 at 21-28; 33-40 (internal Exhibits F, H).)

JCMC's decisions that Plaintiff challenges in this action. Rutgers argues that no plausible legal theory supports a claim against Rutgers arising from Plaintiff's failure to complete the OBGYN residency program at JCMC. (*See generally* Rutgers Mot. to Dismiss.)

Plaintiff responds that the Amended Complaint, together with public materials and the Master Affiliation Agreement ("MAA"), adequately alleges an integrated, programmatic relationship that subjects JCMC and RWJBH to § 1983 liability and that Rutgers had decision-making authority over academic credit. (*See* Pl. Opp'n.)

The Court addresses these arguments below.

### A.  Plaintiff's Claims under 42 U.S.C. § 1983

To assert a § 1983 claim, a plaintiff must allege deprivation of a federal constitutional or statutory right by a person acting under the color of state law. *See Klein v. Donatucci*, 861 F. App'x 503, 507 (3d Cir. 2021) (citing *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)). Here, the threshold question is whether Plaintiff alleges state action or a sufficient nexus to the state to constitute state action. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001); *N.J. Chinese Cmty. Ctr. v. McAleer,* No. 21-08320, 2022 WL 1553334, at *2 (D.N.J. May 17, 2022). Private actors are not liable under § 1983. Rather, only "those who deprive persons of federal constitutional or statutory rights 'under the color of any statute, ordinance, regulation, custom or usage' of a state" are subject to § 1983 liability. *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting 42 U.S.C. § 1983). Thus, to state a § 1983 claim, a plaintiff must allege that they were "deprived of a federal constitutional or statutory right by a *state* actor." *Id.* (emphasis added).

The Third Circuit recognizes multiple routes to find state-action by a private party: (1) the exercise of powers traditionally the exclusive prerogative of the State; (2) acting with the

help of, or in concert with, state officials; or (3) the State "so far insinuated itself into a position of interdependence" with the private party that the private actor must be treated as a state actor. *Kach v. Hose,* 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)); *see also Monell*, 436 U.S. at 691 (municipal liability under § 1983 attaches only when the constitutional deprivation is caused by an official policy, custom, or the decision of a final policymaker).

In his Opposition brief, Plaintiff groups together all three Defendants as "state actors." (*See* Pl. Opp'n at 12–16.) Specifically, Plaintiff contends that (1) he was a student at Rutgers, a state actor (Am. Compl. ¶ 22); (2) the Rutgers Residency was Rutgers sponsored (*Id.* ¶ 23); (3) the Rutgers Residency was a joint venture between Rutgers, JCMC, and RWJBH (*Id.* ¶ 24); and (4) Rutgers was responsible for awarding academic credit to Rutgers Residency students and determining if they completed/received sufficient academic credit to graduate (*Id.* ¶ 25). However, to support this contention, Plaintiff makes factual assertions that are not only unsupported by the record but also directly contradicted by it.

### 1. *Insufficiency of the Allegations Against Rutgers*

Section 1983 liability requires more than affiliation or sponsorship; a plaintiff must allege facts plausibly showing that (1) the defendant acted under color of state law and (2) the defendant itself caused the deprivation. *Monell*, 436 U.S. at 691; *Kach*, 589 F.3d at 646. Measured against those standards, the Court finds that the Amended Complaint fails to adequately allege that Rutgers directed, approved, or ratified the investigatory or disciplinary decisions at issue.

In its motion, Rutgers correctly notes that the Amended Complaint relies on generalized labels— "Rutgers-Health sponsored," "Students who completed Rutgers Residency" (*see* Am.

Compl. ¶¶ 23, 26–29)—while the operative documents identify JCMC as the contracting employer (*see* RA at 1) and vest evaluative and disciplinary authority in JCMC and in the CIR collective-bargaining framework. (Rutgers Mot. to Dismiss at 18-20, Rutgers Reply at 3-9; *see also* Ex. 1 ("CBA"), ECF No. 49-5.) Further, the parties' instruments confirm this allocation of authority.

First, while the Amended Complaint does not mention the 2018 MAA[5] between Rutgers and RWJBH, Plaintiff references the MAA in his opposition brief (*see* Pl. Opp'n at 4, 13–14). However, as Defendants contend, "the sections of the MAA that Plaintiff references concern the clinical integration of Rutgers-employed faculty into the RWJBH physician practices," and "do[] not demonstrate that RWJB[H] and Rutgers must be considered joint participants in the dismissal of Plaintiff from the JCMC OBGYN Residency program." (Rutgers Reply at 4; JCMC Reply at 5.) Instead, the MAA frames the relationship between Rutgers and RWJBH as an academic and clinical alignment and expressly contemplates that the Aligned Clinical Enterprise and Integrated Practice will be operated by RWJBH, with Rutgers exercising academic, consultative, and "dotted-line" roles rather than day-to-day operational control:

> A primary objective of the Parties is to build . . . an aligned clinical enterprise that will be operated by RWJBH, in coordination with the Chairs, Deans, and other faculty leadership . . . The Integrated Practice will be led by the Integrated Practice CEO, who shall be appointed by the RWJBH CEO . . . and will . . . report to the RWJBH CEO . . . with a "dotted-line" reporting relationship to the Chancellor.

MAA § 9.1.1. The MAA further identifies a Professional Services Agreement and associated Clinical Integration Agreements under which University practitioners and services are integrated into an RWJBH-operated practice:

---

[5] *See* Master Affiliation Agreement (2018), https://archive.senate.rutgers.edu/MasterAffiliationAgreement.pdf [hereinafter "MAA"].

> [T]he Parties shall . . . integrate the clinical time of the University-employed faculty physicians . . . into the Integrated Practice, which will be operated by RWJBH pursuant to the terms and conditions of a Professional Services Agreement . . . through which such University Practitioners will render professional services, and which will be an entity organized and controlled by RWJBH (the "RWJBH Practice").

(*Id*. § 9.2.1(a)(i).) The Court finds that these MAA provisions address academic coordination, clinical integration, and shared governance; they do not, without more, provide the particularized factual allegations necessary to show that Rutgers made or ratified the specific disciplinary decisions alleged in the Amended Complaint. *See Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 161–62 (3d Cir. 2017) (institutional ties and joint programs do not by themselves establish state action); *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41 (1982) (regulation, public funding, or affiliation does not convert private employer action into state action).

Next, Plaintiff's Resident Agreements corroborate the MAA's allocation: the resident's contract is expressly between JCMC and the resident. Specifically, the Resident Agreements incorporate the CIR/SEIU Collective Bargaining Agreement as the governing framework for employment terms, grievance procedures, and termination:

> THIS RESIDENT AGREEMENT . . . [is] by and between JERSEY CITY MEDICAL CENTER . . . and [the Resident.]

(RA at 1.) Moreover, the Agreements provide that:

> Both the Medical Center and the Resident are required to comply with the requirements set forth [in] the Committee of Interns and Residents/SEIU Collective Bargaining Agreement ('CIR Agreement'), including but not limited to . . . grievance policies and procedures . . . termination . . . and program completion criteria.

(*Id*. § 2.5.)

Lastly, the CBA confirms that JCMC—through its managerial rights and prescribed internal processes—retains authority over discipline and adverse actions. (*Id.*) Representative

provisions include the recognition clause, the management-rights clause, and the Article IX procedures for adverse and disciplinary actions:

> The Medical Center recognizes the CIR as the sole and exclusive collective bargaining representative of all Resident Physicians . . . employed by the Medical Center at Jersey City Medical Center.

(CBA Art. I.) The CBA further provides:

> The Employer hereby retains the right to manage and control its facilities and to hire, promote, transfer, schedule, assign duties and to discipline or discharge employees for just cause.

(*Id*. Art. V.) Additionally,

> Adverse actions are . . . non-renewal . . . withholding residency credit . . . or non-promotion … No adverse action shall be imposed without sufficient evidence . . . [and] the Housestaff Officer may appeal an adverse action by requesting . . . a hearing before the internal hearing committee.

(*Id*. Art. IX § 2.) Moreover,

> There shall be no disciplinary action imposed . . . except for just cause. . . . CIR may . . . submit the dispute to final and binding arbitration . . . . In lieu of arbitration, a Housestaff Officer may appeal a disciplinary action to an internal hearing committee . . . request must be sent to the Director of Graduate Medical Education or the Medical Center's designee."

(*Id*. Art. IX § 3.)

Viewed together as alleged, the MAA, Resident Agreements, and CBA create a consistent evidentiary picture: Rutgers's role is academic, consultative, and governance-oriented; JCMC (and its CBA procedures) is the employer and the forum for investigatory, disciplinary, and adverse-action decision-making. *See Borrell*, 870 F.3d at 161–62; *Rendell-Baker*, 457 U.S. at 840–41; *Kach*, 589 F.3d at 646; *see also Cruz v. Donnelly*, 727 F.2d 79, 80–82 (3d Cir. 1984). The Amended Complaint contains no particularized factual allegations showing that Rutgers itself issued directives to the program director, prepared evaluations that resulted in withholding credit, or approved termination decisions—facts necessary to plausibly

allege that Rutgers made, directed, or ratified the challenged acts. *See Mayer*, 605 F.3d at 230; *Lungu*, 2022 WL 212309, at *5 n.14; *Borrell*, 870 F.3d at 161–162.

Consequently, because the Amended Complaint fails to plead nonconclusory facts tying Rutgers to the challenged decisions—and because Plaintiff previously was granted leave to replead but again failed to supply particularized allegations—Plaintiff's § 1983 and parallel NJCRA claims against Rutgers will be dismissed with prejudice. *See D'Antonio v. Borough of Allendale*, No. 16-816, 2021 WL 1221010, at *12 (D.N.J. Mar. 31, 2021).

### 2. Insufficiency of Allegations as to RWJBH and JCMC

The Court addresses the sufficiency of Plaintiff's claims against RWJBH and JCMC in light of the allocation of authority described above (including the MAA, the Resident Agreements, and the CBA). For the reasons that follow, Defendants RWJBH and JCMC's motion will be granted in part.

The Supreme Court has identified several instances in which a private party's actions may constitute state action. A challenged activity may constitute state action when it results from the State's exercise of "coercive power" or when the State provides "significant encouragement, either overt or covert." *Brentwood Acad.,* 531 U.S. at 296 (citations and internal quotation marks omitted). In addition, state action is found when a private actor operates as a willful participant in joint activity with the State or its agents; when it is controlled by an agency of the state; when it has been delegated a public function by the State; when it is entwined with governmental policies; or when the government is entwined with its management or control. *See id.*; *McAleer*, 2022 WL 1553334, at *2. Further, Section 1983 reaches only conduct taken "under color of state law," and affiliation or programmatic integration alone does

not convert private action into state action. *Rendell–Baker,* 457 U.S. at 838; *Kach,* 589 F.3d at 646.

Here, the Amended Complaint alleges that JCMC personnel investigated, suspended, terminated Plaintiff, and withheld academic credit. (Am. Compl. ¶¶ 52–63.) Those allegations must be measured against the operative agreements.

The Resident Agreement plainly identifies JCMC as the contracting employer:

> THIS RESIDENT AGREEMENT . . . [is] by and between JERSEY CITY MEDICAL CENTER . . . and [Resident].

(RA at 1.) The Resident Agreements further recognize JCMC's authority to terminate for cause:

> **The Medical Center** may terminate or not renew this Agreement at any time for just cause.

(*Id.* ¶ 4.4.) (emphasis added).

The CBA, which is incorporated into the Resident Agreements, reserves managerial and disciplinary authority to the employer and prescribes internal procedures:

> The Employer hereby retains the right to manage and control its facilities and to . . . discipline or discharge employees for just cause.

(CBA Art. V; *see also id.* Art. IX §§ 2–3.)

The MAA contemplates academic alignment and clinical integration but repeatedly assigns operational management of the Integrated Practice to RWJBH and frames the University's role as consultative:

> A primary objective of the Parties is to build . . . an aligned clinical enterprise that **will be operated by RWJBH.**

(MAA § 9.1.1) (emphasis added). The MAA further provides,

> The Integrated Practice will be led by the Integrated Practice CEO . . . report to the RWJBH CEO . . . with a 'dotted-line' reporting relationship to the [Rutgers] Chancellor.

(*Id.*)

Read together, these provisions show JCMC/RWJBH as the operational employer and disciplinary forum and describe Rutgers' role as academic and consultative. Absent particularized factual allegations that Rutgers (or another state actor) directed, authorized, or ratified the specific investigatory or disciplinary decisions alleged—*e.g.*, documentary evidence of Rutgers directives to JCMC program leadership, Rutgers evaluations that produced credit-withholding, or explicit Rutgers approvals of termination—the Amended Complaint's generalized reliance on affiliation and co-branding does not plausibly allege state action. *See Borrell*, 870 F.3d 161–162; *Rendell–Baker*, 457 U.S. at 840–41. Thus, to the extent that Plaintiff alleges RWJBH and JCMC engaged in state action because of their relationship with Rutgers, such an argument fails for the same reasons set forth in this Court's oral decision granting Defendants' first motions to dismiss. (*See* Tr. 33:3-34:18.) Namely, the Amended Complaint similarly fails to sufficiently allege that the relationship between Defendants RWJBH, JCMC, and Rutgers was so intertwined that RWJBH and JCMC should be considered state actors under the law. Nor is there factual support for the assertion that Rutgers participated in, let alone was aware of, the investigation and termination of Plaintiff. Accordingly, Plaintiff has failed to adequately allege that either JCMC or RWJBH was a state actor based solely on their connection to Rutgers. To the extent Plaintiff may allege another theory of state action in an amended pleading, Plaintiff's § 1983 claims against JCMC and RWJBH are dismissed without prejudice.

### B. Due Process Violations

#### 1. *Procedural Due Process: Protected Interests, Exhaustion, and Adequacy of Process*

Procedural due process requires (1) deprivation of a property or liberty interest and (2) inadequate process. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006). The Court must enforce exhaustion requirements where adequate post-deprivation remedies exist unless those remedies are futile or unavailable. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

The Amended Complaint alleges loss of residency credit, denial of a certificate of completion, and consequent impairment of board eligibility and licensure—allegations that may implicate a protected property interest. (Am. Compl. at 11–13.)

The Resident Agreement incorporates the CIR CBA's grievance, internal hearing, and arbitration procedures (RA, Ex. F at 21–33; CBA, Art. IX.) Here, Plaintiff and CIR engaged those contractual processes, exchanged materials, and sought to convene an internal hearing, but did not complete the internal forum (Am. Compl. ¶¶ 52–63; Pl. Opp'n at 14–16.) The Amended Complaint's statements that the process was "prejudged", or a "sham" are conclusory (Am. Compl. ¶¶ 126–27) and unsupported by particularized factual allegations—such as objective proof that a hearing was refused, that panelists were preselected to predetermine the result, or that decisionmakers were demonstrably biased. *See Alvin*, 227 F.3d at 116–18; *Luciani v. City of Philadelphia*, 643 F. App'x 109, 112 (3d Cir. 2016). Because Plaintiff has not pleaded facts excusing exhaustion, federal relief is premature, and the procedural-due-process claims against JCMC and RWJBH are dismissed without prejudice. Even if exhaustion were excused, however, Plaintiff must nevertheless allege the constitutional inadequacy of the process afforded him. *See id.*

The Amended Complaint recounts an abrupt HR meeting, with no identification of accusers or disclosure of investigative findings, and an immediate suspension (*see* Am. Compl.). Such allegations can, in some circumstances, implicate *Loudermill* protections in an employment context. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–46 (1985). But the Amended Complaint does not clearly categorize the challenged action as disciplinary (triggering *Loudermill* protections) rather than academic (where courts accord significant deference to faculty judgment). Moreover, Plaintiff fails to allege facts specifying the unavailability or inadequacy of the CBA remedies. *Hill*, 455 F.3d at 235 n.12. On this record, Plaintiff does not state a procedural-due-process claim against JCMC or RWJBH.

### 2. *Substantive Due Process: Failure to Allege Conscience-Shocking Conduct*

Substantive due process claims require a deprivation of a fundamental interest and conduct that is arbitrary, conscience-shocking, or an abuse of power. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000); *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). The New Jersey Supreme Court similarly employs the "conscience shocking" test for substantive due process claims. *Radiation Data, Inc. v. N.J. Dep't of Env't Prot.*, 456 N.J. Super. 550, 589 (N.J. App. Div. 2018) (citing *Gormley v. Wood-El*, 218 N.J. 72, 112 (2014)).

Substantive due process protects only a narrow category of fundamental rights and is not a general remedy for arbitrary administrative or academic decisions. *Nicholas*, 227 F.3d at 139–40; *Albright v. Oliver*, 510 U.S. 266, 272 (1994). The Third Circuit has indicated reluctance to extend substantive due process protection to the right to continued graduate education. *See Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 52 (3d Cir. 1986). To survive dismissal, Plaintiff must (i) allege deprivation of a particular quality of property or liberty

interest cognizable under substantive due process, and (ii) demonstrate that the deprivation was so arbitrary or egregious as to "shock the conscience." *Lewis*, 523 U.S. at 846–47; *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).

Even accepting *arguendo* that Plaintiff possessed a constitutionally cognizable property interest in residency credit, the Amended Complaint nevertheless fails to allege conduct that shocks the conscience. (*See* Am. Compl.) The allegations describe an adverse employment/academic decision reached after an internal review process and available contractual remedies; they do not allege brutal, malicious, or arbitrary conduct of the sort required to support a substantive due process claim. *See Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156–57 (3d Cir. 2018). Nor do the downstream educational consequences—loss of a certificate or board eligibility—transform an employment/academic decision into a substantive due process violation. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225–26 (1985) (student's dismissal from medical-program—even though it prevented him from obtaining the degree—did not violate substantive due process because decision, though severe, was not arbitrary or capricious); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91–92 (1978) (academic dismissal does not require heightened judicial review unless it departs markedly from accepted academic norms or shows bad faith, ill will, or impermissible motives). Employment and professional privileges, even when intertwined with academic training, are not fundamental rights warranting substantive due process protection. *See also Hill*, 455 F.3d at 235 n.12. Accordingly, Plaintiff's substantive due process claims under § 1983 and the NJCRA fail as a matter of law and are dismissed without prejudice.

### C.  Equal Protection: No Particularized Comparator Allegations

For equal protection, a Plaintiff must plead either class-based discrimination or, in limited circumstances, a class-of-one claim (which is generally inapplicable in public-employment contexts). *Hill*, 455 F.3d at 239; *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). Plaintiff's equal protection theory is pleaded in two alternative forms: a class-based claim and a "class-of-one" claim. (*See* Am. Compl.) In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), the United States Supreme Court recognized the class-of-one doctrine under equal protection jurisprudence. A class-of-one theory permits a plaintiff to bring an equal protection claim alleging that the plaintiff was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* In *Olech*, the plaintiff alleged that Village officials demanded she provide a thirty-three-foot easement as a condition of connecting her property to the municipal water supply while requiring only a fifteen-foot easement from other similarly situated property owners. 528 U.S. at 563. Olech alleged that the Village's demand was "irrational and wholly arbitrary" and was done in retaliation after Olech had filed previous, unrelated litigation against the Village. *Id.* The Supreme Court held that the plaintiff adequately alleged an equal protection violation. *Id.* at 565. To state a class-of-one claim, Plaintiff must allege intentional treatment different from others similarly situated and no rational basis for the difference. *Hill*, 455 F.3d at 239. New Jersey courts also recognize a class-of-one theory when supported by the facts. *Radiation Data, Inc.*, 456 N.J. Super. at 562; *see also Paul Kimball Hosp., Inc. v. Brick Twp. Hosp., Inc.*, 86 N.J. 429, 448 (1981).

A class-of-one theory requires a plaintiff to allege: (1) the defendant intentionally treated him differently from others similarly situated; and (2) there was no rational basis for the

difference in treatment. *Hill*, 455 F.3d at 239. Regarding the first element, "[p]ersons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). *See also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007) (rejecting class-of-one equal protection claim where plaintiff company charged with environmental violations failed to establish that other companies not charged were actually similarly situated). Here, Plaintiff fails to identify a comparator who engaged in comparable misconduct but was treated more favorably, and thus fails to plead the essential elements of a viable comparator-based or class-of-one equal protection claim. (Am. Compl. ¶ 82.) *See Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). Therefore, the equal protection claims against RWJBH and JCMC are dismissed without prejudice to the limited extent that Plaintiff may plead properly particularized comparator allegations in a timely second amended complaint.

### D.  Group Pleading and Rule 8 Deficiencies

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This standard ensures that each defendant receives fair notice of the conduct alleged against them and the grounds on which each claim rests. The Amended Complaint, however, repeatedly attributes actions and omissions to "Defendants" collectively, without differentiating among Rutgers, JCMC, or RWJBH, thereby obscuring who is alleged to have done what. For example, the Amended Complaint pleads:

> Defendants, acting jointly and in concert, suspended Plaintiff, withheld academic credit, and terminated his residency without due process or equal protection of law.

(Am. Compl. ¶ 82.)

Such undifferentiated allegations fail to delineate each defendant's specific involvement, timing, or authority, and therefore do not satisfy Rule 8's requirement of notice pleading. Rule 8(a) "mandates a statement 'showing that the pleader is entitled to relief.'" *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *2 (D.N.J. Mar. 19, 2013) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)). Courts in this District have held that a plaintiff's repeated and collective allegations against all defendants without differentiating between them does not show the pleader is entitled to relief or put defendants on notice of the claims against them. *See id.* at *3 ("To the extent that the Complaint does include specific allegations against particular Defendants, it largely fails to connect these factual allegations to the specific counts in the Complaint."); *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) ("Plaintiffs provide only conclusory allegations against Defendants as a group, failing to allege the personal involvement of any Defendant as is required.").

Accordingly, the Amended Complaint's undifferentiated allegations against the defendants as a group are insufficient under Rule 8. Each cause of action in a Second Amended Complaint must identify the specific defendant or defendants responsible, articulate their role in the challenged conduct, and provide factual allegations showing personal participation and causation.

Plaintiff is granted one final, narrowly circumscribed opportunity to cure the pleading defects identified herein. The amended pleading must be filed within thirty (30) days of the date of this Opinion and accompanying Order and must: (a) identify with factual particularity the acts taken by each named defendant (who did what, when, where, and by what authority); (b) for each § 1983 claim against JCMC or RWJBH, plead non-conclusory facts demonstrating

state action under a recognized theory (for example, documentary or testimonial evidence that Rutgers officials issued directives, approved or ratified the challenged discipline, or otherwise controlled the decision-making that produced the alleged deprivation); (c) either allege completion of the CBA grievance/arbitration procedures (with dates, filings, and outcomes) or plead with particularity facts demonstrating that exhaustion was impossible, futile, or otherwise excused; (d) identify any equal-protection comparator(s) with sufficient specificity and plead how the comparator was treated differently; and (e) comply with Rule 9(b), if applicable. Any Second Amended Complaint that fails to cure the defects identified herein will be dismissed with prejudice.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED** *in part*. Plaintiff's claims against Rutgers are **DISMISSED** *with prejudice*. Plaintiff's remaining claims are **DISMISSED** *without prejudice*. To the extent Plaintiff can cure the deficiencies identified herein, the Court will give Plaintiff the opportunity to file an amended pleading within thirty (30) days of this Opinion and the corresponding Order. Otherwise, this Court will dismiss this matter with prejudice. An appropriate Form of Order accompanies this Opinion.

**DATED:** December 29, 2025

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge